Attorney Shelby re's on behalf of me. Just wait one moment because I'm going to have to go back to my desk and get a new one. Thank you, Mr Green. You can be seated. Good morning, Your Honor. Good morning, Your Honor. In this case, we are I am asking that you overturn the conviction for the aggravated criminal sexual abuse. We believe that conviction should be overturned because the trial court erred in permitting the introduction of certain testimony regarding an offense not charged in the indictment. The court's error in admitting that evidence was an abuse of discretion, and it was not harmless. The facts, the crux of this matter is the court's ruling in admitting the testimony of a certain H. G. The state made certain proffers regarding the testimony and the court rule based on the proper without hearing the witness. The proffers out of state was that a certain H. G. Would testify to an incident of abuse committed by defendant some years before. I believe it was within the same time frame as the case on trial. You're not asking that we reverse the case outright. You're asking for a reversal and remand. Yes, sir. I'm sorry if I'm in it because in your brief, you just you asked for an outright reversal, but you're asking for a remand from the trial, correct? Yes, Your Honor. So the case we look at is Donahoe, correct? Yes, sir. Yes, ma'am. And so the court's looking for similarities in order to determine whether or not this uncharged conduct should come in. The court is looking for similarities, and I was looking for dissimilarities, which we believe is the key in this case. You have a similarity of age? Yes. He touched both of their vaginas. We disagree with some of that. Okay. He says it was an accident. The other girl said he touched it. He's playing a game. If I might back up one moment, the court ruled that the testimony by H. G. Was admissible. He found it relevant based on the similarity in ages and the fact that the defendant met both of the Children through the same church. Didn't he also find that they were both? He touched both of their vaginas. It was a game. It's in the context of a game. He told them it was a game. If you read the court's ruling, he says it's close enough in time, and I'm quoting from transcript of the hearing. Page 1 93 lines nine through 20. You're not arguing the time issue was to be no man. I have not touched the time issue. We're concerned only with factors two and three of the statute. What the court ruled. It's close enough in time. The ages are of the all the girls are similar, and it's all through contact with the church, regardless of how the church is subdivided. So the court found that the evidence by H. G. Would be relevant based on the similarity in ages on the fact that the defendant met them through the church. So the access and opportunity. It's about the access and opportunity as well, isn't it? We disagree about the access. The state argues that the similarity, the differences in the in the two cases, the propensity case in the trial case, if I may refer to them as that, the state says that the differences between the propensity and the trial case are simply a Donoville. That's wrong. What Donoville says is that you look to the nature of the abuse. It is not the nature of the crime that is important, but it also talks about mere general areas of similarity because we're not looking or they weren't looking to introduce this as part of M. O. Modus operandi. Correct? No, Your Honor. But that's that's the difference that I have with the trial court in the state. The trial court seems to have found it to be relevant simply because of the ages and the way defendant met the two Children. That's your threshold of similarity. However, that does not relieve the trial court of its obligation to evaluate that as that evidence with the three factors that are set out in Donoville to see if it is now admissible. It's not just a question of relevance. Even relevant evidence can be excluded if the prejudicial value is greater than the probate. So you're saying the general areas of similarity are only looked at to establish whether or not the evidence is relevant. That would be correct, ma'am. That's my position. You're not saying that the trial court judge here did not make a bank to make a do a balancing evaluation. That is correct. You're saying he did not. He did not. What he said, and I will quote to you again. He says on page 1 93 at the top, he acknowledges the court has to weigh the probative value versus the prejudicial effect, quoting from the top of 1 93 lines 1 through 3. But he never makes that evaluation. He never way doesn't say it on the record. The court's not required to articulate every foot. Clearly, the record shows the court was well aware of his responsibility. Correct? The core correct. The court acknowledges its responsibility, and we look at his ruling for an abuse of discretion. Correct? Yes, sir. And in looking at it, there are general areas of similarity age using the church to provide access to the victims hiding or doing the acts or committing the acts while concealing from others in one instance under the blanket and the other instance when they're alone, the defendants alone with the child in his home in the charge defense. Gender and the fact that it was done in the country and again. So how are those? Those are areas of similarity that jump out at anybody who's looking at this? Yes, sir. But that's not the point of Donahoe. What Donahoe says is their similarities and their dissimilarities. And just because some crimes are dissimilar doesn't keep them out. But what Donahoe says, and this is where it gets really critical, sir. Donahoe says that look, there are similarities. There are similarities. Some of those are a result of the defendant's access to the Children. But but what I what we the Supreme Court in Donahoe says is that we find more compelling and I'm quoting here from 204 Illinois. Second would be found at 1 86 in some. All of these differences are a product of defendant's access to the victims. Again, we find more compelling the similarity of the nature of the abuse itself because that was a product of defendant's choice and the and the trial evidence is this. In the propensity evidence, the testimony by H G H G. The proffer in the testimony is that I was on the couch in the living room, fully clothed under covers watching television. My brother and sister were in the same room and maybe my parents. Mhm. The child H G describes it as a light touching or tickling in the vaginal area over the clothing. That's how she describes it. The trial evidence, the dissimilarities amazing. The trial evidence actually involved the defendant playing a game that the child telling the child to go into the bedroom at time. I know we don't know. It's the difference between bondage and penetration. The probe, the trial case as opposed to a light touching like we were well aware of those. Those are the differences that we believe Donahoe says to focus on. And that's why in the case of people versus Smith and the case of people versus Johnson, as I cite in my brief, these are the differences that go to the nature of the abuse, not the nature of the contact with the child. Did he meet him at church? Were they the same? This is propensity evidence. Yes, it's not. M. O. No access to the Children. And here's another point that you recognize we can affirm for any basis. I'm putting record. Your client made statements regarding his attraction to Children. Correct. He denied the majority of the our standard review is we look at the evidence from the light and light most favorable people. But on this issue, there's evidence in the record that your client made statements about his attract his attraction to Children. Correct. There are references in the testimony by the two detectives who questioned defendant. The two detectives said that defendant, I'm gonna get follow up. Go ahead. I know what the record is. Okay, sir. Have you are familiar with people versus Cucarachas, where other crimes evidence to corroborate the defendant's confession? Wouldn't even not withstanding dissimilarities, wouldn't HTS testimony corroborate the defendant made to the detectives that he was attracted to Children sexually? Would H G's testimony corroborate the statements? Defendant's statements to the detectives that he was sexually attracted to Children. Whether it corroborates it or not does not make it admissible. Your honor. Did the state raise it for that purpose? No, ma'am. The state raised it for propensity only propensity. And in fact, they amended their motion. And that's what they said it was for. But please understand, I'm not arguing that it isn't relevant. You're arguing that it's not close enough in time. It's not the similarities that would allow it. I'm not discussing the time. I'm arguing that the factual dissimilarities and the other facts and circumstances which are set out in the CS 1 15 7.3 C factors to is are the facts similar. And in this case, while you may have a threshold similarity, the age of the Children and how the defendant met them, that's it. There are no other similarities and the dissimilar. I'm sorry we talked about earlier gender, the gender where the the families families. Well, part of it is similar. I mean, it's the same general area, but the fact that it was in the context of a game. Your honor, these are not the nature of the abuse, and Donahoe chose its words very, very carefully. Well, it didn't say exclusive that you had to look at that exclusively. You said it found it more compelling. Yes, ma'am. But that doesn't necessarily mean that the other factors couldn't be looked at to compare similarities. Certainly they can be looked at. And again, the standard here by which we have to look at what the trial court did is did the trial  and it is an abuse of discretion under Donahoe. If the decision, if the evaluation is arbitrary, fanciful, unreasonable or where no reasonable man would take that view, that's how Donahoe describes an abuse of discretion. If you look at Johnson, which I cite 406 Illinois about 385 Johnson also follows up on Donahoe's specific language. And again, not to beat the dead horse, but Donahoe found more compelling the nature of the abuse, either the similarities or the dissimilarities. So how he met the Children. And there are cases in here that talk about the function of his access to the Children. The court felt that the matters of access really are important. What Donahoe said to look at was the nature of the abuse. And in this case, the nature of the abuse is on trial bondage. He tied her hands up and he penetrated what she was alone when she was alone with him. Yes, sir. And the propensity evidence, according to the child, H. G. Was a light touching over the clothing under a blanket while other people are in the home. Yes, sir. That is the nature of the abuse itself. It's not access. It's not how you got to know them, but the nature of the abuse, because that's what is a propensity factor. Access to the Children goes to the nature of the abuse as well and how you find access to the Children. That is access. How about a school teacher who vaginally penetrates one victim and anally penetrates another victim? One he does at school. One he does at home. You're saying that that the anal sex is not charged. It's offered his propensity evidence under your argument that would never come in because the nature of the abuse is different. Your Honor, that would be your argument, right? You're splitting hairs a little finer than I would like to. What I'm saying is that in this case, the differences in the nature of the abuse are so striking. You cannot argue one is a propensity for the other, and that's exactly what people versus Johnson did. It looked at the similarities and then it reversed the condition because they're what the court in that case didn't engage in meaningful weighing prejudicial versus that was a salary factor. Johnson looked at the differences in the nature of the abuse. And in my brief, I point out it says five and Johnson court factors 134 and five actually go to the nature of the abuse. The defendant in that case made the lady take cocaine and alcohol during the abuse. Is that relevant? Yes, ma'am. But that's what that's not the sex offense. That's not a specific offense. It was the nature of the abuse. What he was doing at the time he was abusing the lady. Then again, you're talking about a whole different realm of sexual assaults against adult victims, correct? In Johnson, they were adults, weren't they? Johnson. They were adults, and they were fairly similar in some aspects. Multiple offenders in one single offender in the other. I mean, one was a more for you. One was vaginal abuse. And again, Johnson said, Look at the nature of the abuse, because when they're that different, they cannot be considered to be propensity. It's this specific choice of words that Donahoe used nature of the abuse. That's an exact quote. It's just like in Ray Roland is when I'm talking about harmless error, not in Ray Roland is Illinois Supreme Court says Factor one. It might have contributed to the conviction. So it's these specific words, and I don't mean to parse individual letters, but we're seeing the same issue today. The discussion is what is a natural born citizen as opposed to a naturalized citizen? These words make a difference. Donahoe chose its words very carefully. The nature of the abuse, not the nature of the crime and the surrounding things and how he met her. Did he use a car or not? But it's the abuse, the nature of the abuse that becomes critical. And in in Ray Landis, the Supreme Court again chose its words very carefully. If it, quote, might have contributed to the victim, the conviction. I believe I've gone over my time. Yeah, I'm sorry. That's all right. Wrap up. Well, you'll have time in rebuttal. So do you want me to finish now? No, no, no. I just wanted you to say, Therefore, Judge, I ask that you reverse the trial court and be seated. Therefore, Your the trial court and now he's seated. That's right. And then you'll come back up and I'll come back if you don't mind. I don't mind. May I leave my material here? You may. Thank you. Sure. Come on, Mr. Round two for you. I'm four for you. How is his interpretation of Donahue Donahoe incorrect? It's incorrect for the reasons that you were the questions that you were opposing to him. Don, who, in this particular case, all of these factors that done the similarities were there and the diss and they outweighed the dissimilar dissimilarity. But the similarities aren't going towards just sex offense. They're going towards other things. And he's saying in Donahoe that's not permitted. It's talking about just the events itself. But the offense itself was touching of the vagina. And that's what happened in both cases. Well, one was digital penetration and the other was touching over the clothing. Well, so those are different. They are different acts, but then you can't look at them in a vacuum. You have to look at the access of the defendant had. You can't punish the victim because the because the defendant had different kinds of access to his victims and could only do so much in one case, but could do more in another. Clearly, when he was alone in this in this home, the victim in this case, he could disrobe this child. He could tie her up and he could. He could touch her and digitally penetrate her. You never denied that there was contact between his hand and the victim's vagina. He said that it did happen, but it happened during the game. Correct. Correct. And he also he admitted he testified. He said, Okay, I did touch. I did touch the A. F. In this case, he said. And then he talks about this that she fell on him. She fell on him of his hand, and it was her fault, and she didn't want to get up and all those attendant circumstances. He never denied. And when they when the police officers spoke to him, he never denied that it happened. He just said it didn't happen at that time. It didn't happen in the airplane. So he was he testified and admitted a lot of the actions. Did he acknowledge his convictions conviction for which it's a period of probation? Well, that was the problem. That was the I mean, the people didn't just ask to bring in the information about H. G. Who ultimately testified they wanted to bring in the conviction for D. G. Who was H. G. Sister, but that she was not available. She refused to testify. So the court and that's what important. We did its balancing act where the defendant really talks a lot in his brief more about the balancing act, saying that it wasn't done, and it sounds like it wasn't done. But the court but the court did say I have to make determine the prejudice here, and the court made the determination not H. G. Versus a F as much as H. G. Versus the conviction. And he said with H. G. She's gonna be there, and the jury's gonna see her, and they're going to evaluate her credibility with D. G. He said, Unless this child comes in to testify, I'm not gonna allow it because you're just allowing, you know, boom, a conviction, and the jury's gonna say, Oh, it's too prejudicial. He wasn't going to allow another trier of facts decision to sway the trier effect. In this case, he said they get equal access to making that determination, even though they're not sitting in on the D. G. Case, and that's why the court said there's enough similarity here, and if they don't believe H. G. They don't believe her, and that's how they were able to make this determination. But so you're saying his comments regarding weighing were made in the context of comparing it to D. G. And what evidence he was allowing there and were to infer the weighing from that conversation or those remarks that he was looking at. Why is this prejudicial or not prejudicial? And so it's not prejudicial. This child's coming in to testify, and they said, You're also asking for this test for this conviction to come in without testifying. The weighing factors between a F had to be between a F and H. G. Not a weighing factor between H. G. And D. G. Correct. But he does do the weighing factor in that he's saying H. G. Is not prejudicial in context of this case because the jury is going to be able to evaluate her credibility in addition to the similarities in addition to the similarities, in addition to being able to weigh the credibility of all the people, including a F who testify in this underlying case. But he never used the words prejudice or prejudicial. He used it, but he said in generalities, he didn't come out and say, Now I'm doing the balancing test. Part of this part of what I'm obligated to do. He didn't come out and say that it's rather subtle, and he does do a balancing. Um, we also believe that and we are going to lengthen in. I think, um, our argument to a sort of the reverse side of the coin. And so I'm going to jump to argument three and whether there this was, um, it demands reversal of a remand because whether or not it was prejudicial to the case, and I think there was ample evidence presented by the people to have convicted him, regardless of whether H. G.'s testimony came in. But first of all, um, a F's own credibility was fronted for the jury. She repeatedly said, I didn't tell my parents when the mother testified. They said we asked her if this man had touched her or if anyone had touched her, and she denied it, and she denied it for years. So they could say, Well, maybe this kid just lies or she makes stuff up, and we don't know they had. They have to evaluate. Then they had her statement that was recorded at the Children's Advocacy Center. So they had that to be able to evaluate in terms of her own They had ample evidence to figure out whether or not a F was credible. Then you had the police officers and the police officers were very credible. It was very interesting about the police officers is, um, get their names mixed up. The one of them said, you know, we talked to him and we said, Look, this allegation has been made to you, and he never denied it. He never came out and said much. He's doing that. He never denied it. But what he did say to them and then he testified to himself, testified to himself, testified to a trial was that I touched this child, but she fell. And again, he said we were playing a game. And lo and behold, this is what these two girls were saying. They were always playing. He was always telling them this is just a game. This was just a game. And this is how he was explaining his behavior to the police. I was playing a game. He denied it. But the jury, the jury was able to evaluate his credibility. And they had two officers who came in and testified as to how he presented himself to them. And they said, Look, we interviewed him twice. And he was, I believe it was at the first interview. He was, like, lasered in on one of the technique they use is that one of the child abuse cases that one of the police officers will start talking to him about. Really, let's talk about educating Children about their sexual knowledge. And he just completely focused on that offer. Officer ignored the other one and started talking to him, saying, Yes, it wasn't me. I wasn't for my sexual gratification was for her sexual gratification. I a trial. You said that correct? Sorry, he denied the trial. And so again, that's for the that's the trial. I touched her. But now aren't there many, many dissimilarities here in the more dissimilarities there are, the more the prejudicial effect. And there's nothing in the record that indicates that the trial judge was aware of that or took that into consideration. The dissimilarities being bedroom versus couch alone versus not alone. Tied up versus under a blanket, fully clothed. And those are, I would say, come under the area or the aegis of accessibility to the victim. The one case I can't remember the case where they talked about the man was sexually abusing Children. At first he did it when he was 18 years old and he was single and he was taking kids back and forth in a card of church activities or something. Then he was charged. Those I think it was. And then years later he was stepchildren in the home and he was abusing them completely different because he had and the court said he had completely different access to the Children from when he was 18 years old to when he was a mature when he was an older adult and completely different. These are just sort of dissimilar. But here and they said, you can't blame the victim for the accessibility that the that the perpetrator has. He's just making do with what he has. And in this case, we think that there was there was enough that outweighed any kind of prejudicial effect that H. G. Testify that to the to the things that were very similar. He touched me in my vaginal area. He told me that we were playing a game and and she even herself said at first she thought, Whoa, this what happened here was that a mistake? And then later on, though, she explained that initial feeling by saying something was just not right here. And whenever this man came into my home, I stayed away from him. And she said, I just, you know, she made herself inaccessible whenever the whenever he came there. So the child knew something was wrong. She wasn't she herself was trying to. And she was a child. She's a little girl. She was trying as even an adult would do if you're touched inappropriately. So you go, What was that? And then you say, Well, you know, yes or no, we make an evaluation. It's just that she probably has less knowledge and she was afraid to tell her parents. So for all these reasons, we believe that the conviction of defendants should be upheld. Thank you. Thank you, Mr. Green. Come on back. Is it? It is. It is disagree with one comment by the state. I think Judge Burkett it is not a question here. Is the other evidence sufficient to convict? That is not the issue. Please understand that. Read in Ray Rolando's. The question is, did this testimony by H G might have impacted the verdict? The state makes the argument that there was enough evidence here to convict without H G. And so you should affirm the conviction. That is not the issues, sir. But the question is whether or not absent this error, would it have been more like this? No, sir. No, no. Is there potential for an acquittal here? I mean, can we say that the unreasonable doubt that the result would have been the same? I cannot say that the result would have been the same your honor without H G. And don't forget what H G says. Essentially, she says defendants a bad guy. He touched me. Well, hers is the stronger case. I think wouldn't you? H G. No, no, no. I'm sorry. The A. F. A. F. Was the strongest. Certainly the stronger case. Again, there's some differences with a S case. A. S. Says he put this shard like hard rope that hurt me really bad. But the next day at the swimming pool, there are no marks. Well, no one sees it. No one saw any. But she's a bathing suit. Certainly a mother who looks in an eight year old child. If she's got rope burns on her wrist, the mother would know. Was there evidence that she had rope burns? There were no rovers. Nobody saw anybody. And what I'm saying is, had there been rope burns, which you would expect from the type of behavior that A. F. Described, you would have expected. Sometimes she described trying to get loose. No, she described it as a with sharks. She said it hurt really bad. The rope hurt really bad. That's a direct quote. I don't want to get lost here. One of the concerns about the propensity evidence is that it may be the confusion with the jurors. And as I point out in my brief, that is what happened here. A. F. Described the bondage and penetration, and that was charged, I think, in count one and count to charge simply the touching. They found defendant not guilty of the penetration, which you would have expected them to find a guilty on if they believed A. F. We've heard you've heard of plenty. I'm sorry. Maybe they just decided the defendant needed a break. That's possible, Your Honor. But now we're beginning to speculate. The fact is they found him not guilty of penetration as a F. Describes not guilty. Your argument is that H. G.'s other crimes evidence that that finding shows the prejudice. I believe so. Yes, sir. Because there is instruction to the jury on how to look at this evidence. Council, Your Honor. And there are cases that say juries follow the instructions, and that's the bedrock of our judicial system. But there are cases that will tell you jurors disregard those instructions when they want. Just as your question suggested, they wanted to cut him a break, maybe so they disregarded the instructions. But jurors do some strange things. That's why the judge in this case had the duty, the obligation to keep out that evidence which does not meet the statutory or case law standards. He didn't do his job. Maybe that maybe in your to your benefit, because they thought the penetration was they were judging H. G.'s touching, and that wasn't penetration. So it may have been your so they found defendant guilty because H. G. said he touched me. That wasn't the charge. Worse. A. F. said he penetrated her, and they found him not guilty on that. They were confused because the other crimes evidence came in. Yes, maybe. But again, it in your to your benefit, didn't it? No, ma'am. They found him guilty. He is sitting in prison. It's not to his benefit. But sometimes also sometimes with the jurors, let me just throw this out here. Penetration with is any touching, however slight, and they may not have felt the penetration with any touching, however slight. Ma'am, the young lady A. F. Testified. Apologize. He fingered me. He put it in and out, moved it in and out. There's no question about that. I mean, that's what she said. And the jury found defendant not guilty of that. But she the jury found him guilty of essentially what H. G. described. But H. G. wasn't the basis of the charges. That's the problem with this propensity evidence. The jury hears he did this, you know, two years ago, and now he's charged with this. Look, he's guilty of something, and that's exactly what the Illinois Supreme Court has said. We must fear in this type of cases. I didn't want to say one last thing. You are correct, Your Honor. As the similarities go up, the prohibitive value goes up. But as the similarities go down, the prejudicial value in this case, Donna Poe said, Look at the nature of the abuse. And in this case, the nature of the abuse could not be more different, like touching over the clothing as opposed to bondage and penetration. There cannot be much more difference. And I didn't want to get back to this idiosyncrasies. That's where Smith 29 Northeast 2nd 6 74 comes in. They point to the idiosyncrasies of the defendant's behavior in Smith. The case on trial, I believe it was the defendant would look at the Children on maybe touch them, but was only interested in the lower half of their bodies. The propensity case, and I may have confused, but the propensity case was an actual penetration. And Smith said, You know, that's so different. That's the idiosyncratic behavior of a defendant. Some people like to use big pens, and some will use an $89 cart blank. It's an idiosyncrasy of your behavior. And in this case, like touching over the clothing is nowhere similar to a bondage and penetration. It's it's what was in his head. I mean, he had opportunities to touch a F as he had touched a G and never did. There's only one incident with a There's only one incident with H G, but he had almost unlimited access to a F and he had extensive access to H G. If he had wanted to touch a F as he touched a G, he could have without a doubt. If he had wanted to touch H G or due to H G as he did to a F, then he probably could have obtained access and done so. He did not. I asked you to look at the case. I'm gonna ask you to wrap up. Okay, people versus Smith. 406, Illinois Appellate 37 47 page 48 of my opening brief. It is our exact case. The trial judge. We'll take a look at that. We'll read that case. I'm gonna ask you to wrap up. I let you go. Yes, ma'am. Your honor, I apologize, but this evidence should not have been admitted. It was trial. Courts must be very careful admitting it's prejudicial. It was not harmless in this case. If you look at the three factors, it might have impacted. The similarities are not there. The other evidence is not overwhelming. That's why longer was so important. In this case, it is he said against, she said there is no physical evidence of no other witnesses. It's he said, she said. And in such a situation, says no air witnesses in this case. Not to the crime, sir. The detectives not to the crime, sir. There never are child sex cases. I mean, we see a lot of child sex cases. There are cases where a witness walks in and sees things happen very rarely. It does happen in this case. There were no other state points to is simply the surrounding circumstances. We don't deny he went to Great America with him. We don't deny it. All of those do not pertain to the crime itself. Thank you, Mr Green. Thank you so much for your arguments. We will take this case under consideration and render a decision. Of course, court is